FILED ___ ENTERED
___ LODGED ___ RECEIVED

JUL 15 2014

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY ___ DEPUTY

## AFFIDAVIT IN SUPPORT OF A TRACKING WARRANT

1. Your Affiant, Special Agent Sung Kim of the Federal Bureau of Investigation (FBI), deposes and states as follows:

2. This is an Affidavit in support of a tracking warrant on the cellular telephone bearing call number **410-258-5598**, with service provided by Sprint (the "**Target Telephone**"), used by **Gilbert STOKES.** I submit that there is probable cause to believe that the **Target Telephone**: (1) contains evidence of a Hobbs Act robbery and conspiracy to commit a Hobbs Act robbery in violation of 18 U.S.C. §1951, and (2) was used in connection with a Hobbs Act robbery and conspiracy to commit a Hobbs Act robbery in violation of 18 U.S.C. § 1951.

### EXPERTISE

3. I have been employed as a Special Agent of the FBI since September of 2008. I am currently assigned to the Maryland Joint Violent Crime/Fugitive Task Force, and as such I am responsible for investigating violent crimes, including bank robbery, commercial armed robbery, kidnapping, carjacking, and extortion, in addition to fugitive matters and major theft. I am familiar with the mode of operation of individuals who commit armed robberies, including, but not limited to, their use of electronic devices to plan and coordinate those robberies and means of escape.

4. The statements in this affidavit is based on information provided to me by the Baltimore City Police Department, Special Agents of the FBI, other law enforcement officers, support employees, and on my experience and background as an Federal Bureau of Investigation agent. All conversations and statements described in this Affidavit are related in substance and in part unless otherwise indicated. Since this affidavit is being submitted for the limited purpose of

securing a tracking warrant, I have not included each and every fact known to me concerning this investigation. I have not, however, excluded any information known to me that would defeat a determination of probable cause. Further, this affidavit does not contain all facts known to law enforcement officials about the investigation described herein. I have set forth only the facts that I believe are necessary to establish probable cause to believe that Target Telephone; (1) contains evidence of a Hobbs Act robbery and conspiracy to commit a Hobbs Act robbery in violation of 18 U.S.C. §1951, and (2) was used in connection with a Hobbs Act robbery and conspiracy to commit a Hobbs Act robbery in violation of 18 U.S.C. § 1951.

## BACKGROUND

5.    In December of 2013, your affiant began investigating Gilbert STOKES in connection with a series of commercial armed robberies in Baltimore, Maryland.

6.    On December 12, 2013, the 7-Eleven store ("7-11"), located at 7410 Windsor Mill Road, Windsor Mill, Maryland 21244, was robbed at gunpoint.[1]

7.    At approximately 11:30 p.m., Suspect 1, later identified as Gilbert STOKES, entered the 7-11 wearing a cap and a face mask. STOKES asked a male employee (V1) for three (3) packs of Newport cigarettes. As V1 turned around to get the cigarettes he heard STOKES mumble something. When V1 turned around he observed STOKES looking in the direction of the store's office. Another employee (V2) was on the phone and when STOKES saw V2 he

---

[1] 7-11 is a national chain of stores that is involved in the sale of products shipped in interstate commerce. Therefore, the robbery of the 7-11 had an impact on interstate commerce. Additionally, all of the businesses discussed in this Affidavit are involved in interstate commerce and thus, each of the robberies discussed herein had an impact on interstate commerce.

2

this

pulled out a handgun and walked towards the office while yelling at V2 to hand over the phone. V2 threw the phone at STOKES to distract him. STOKES asked V2 where the safe was located. V2 advised STOKES that the safe was behind the counter area. While STOKES was confronting V2, V1 was able to hide inside another area of the store. When STOKES turned to look in the direction of the counter area, V2 was able to close the office door. STOKES took the three (3) packs of Newport cigarettes but was unable to take any U.S. currency. STOKES then fled. Surveillance video obtained from the 7-11 corroborated the victims' account of the robbery.

8. During the robbery, two witnesses were sitting in a vehicle at an Exxon gas station located across the street from the 7-11. The witnesses observed STOKES wearing a mask and reaching over the counter of the 7-11. Based on their observations the witnesses believed a robbery was occurring at the 7-11. The witnesses observed STOKES exit the store wearing a mask. STOKES shoved an unknown object into his jacket pocket and ran towards the Woodlawn Motor Coach parking lot located two businesses away from the 7-11. The witnesses drove towards the parking lot and observed a van turn on its lights and leave the lot. The witnesses followed the van and were able to obtain a Maryland registration of 1AR3539 before losing sight of the van.

9. Baltimore County Police Department ("BCPD") detectives determined that the van was registered to another individual. This person is believed to be a co-conspirator of STOKES and is referred to herein as Suspect 2.

10. On December 13, 2013, BCPD Officer Wilson located the van parked on Selgrave Road near Washington Avenue in Windsor Mill, Maryland. Surveillance was conducted on the

van. BCPD Detective Shipley observed Suspect 2 enter the driver's seat of the van and drive away. A traffic stop was conducted and two (2) cell phones were recovered from Suspect 2. Suspect 2 was detained and taken to the Baltimore County Public Safety Building. Suspect 2 was advised of his *Miranda* rights and agreed to provide a statement to detectives. Suspect 2 advised that he is the only person who drives his van and that he drove the van on December 12, 2013. He further advised that he drove his van on Windsor Mill Road near the 7-11 around the time of the robbery, but denied having anybody in the van with him or stopping in the Woodlawn Motor Coach parking lot.

11.     On December 18, 2013, BCPD Detective Sholter executed a search and seizure warrant, signed by the Honorable Judge Ryan of the District Court of Maryland for Baltimore County, on the van bearing Maryland registration 1AR3539. Recovered under the front passenger seat was a Smith & Wesson .357 caliber Magnum revolver, serial number CCW8199, loaded with six (6) live rounds. The firearm was identical to the firearm observed in the 7-11 surveillance video on December 12, 2013, referenced *supra*.

12.     On December 19, 2013, BCPD Detective Sholter executed a search and seizure warrant, signed by the Honorable Judge Ryan of the District Court of Maryland for Baltimore County, on the two (2) cell phones recovered from Suspect 2. One of the cell phones, a Boost Kyocera cell phone, was determined to have an assigned call number of 443-226-9646. Discovered in the Boost Kyocera cell phone was a text message from "Gil" on December 12, 2013, the day of the 7-11 robbery, asking Suspect 2 what time he ("Gil") was going to be picked up. Suspect 2 responded to "Gil" around 10:30 p.m., one hour before the robbery, that he would

4

be there in a minute to pick up "Gil." A search of Suspect 2's phone determined that the phone number assigned to "Gil" was **410-258-5598**, which is the **Target Telephone**. Detective Sholter searched police databases for phone number **410-258-5598** and found the number associated to a person identified as Gilbert STOKES as recently as November 4, 2013. The physical description of STOKES in the police database was consistent with the physical description of the suspect provided by the victims of the robbery at the 7-11 on December 12, 2013.

13. An arrest warrant was obtained for Suspect 2 and he was arrested on December 19, 2013.

14. On Monday, December 23, 2013, STOKES was arrested for the armed robbery of the Subway restaurant located at 1 N. Howard Street, Baltimore, Maryland. Recovered within the immediate vicinity of STOKES at the time of his arrest was a Crossman Model C-11 .17 Cal. BB-Gun, SN 912920841, which has the appearance of a real semiautomatic handgun. STOKES was positively identified by the victims as the individual who robbed the Subway. The clothing STOKES was wearing at the time of his arrest was recovered and submitted to the Baltimore Police Evidence Control Unit. Subsequently, STOKES was transported to the Central Booking and Intake Facility and charged with the armed robbery of the Subway.

15. On Wednesday, January 8, 2014, STOKES was positively identified through a photographic array as the suspect in the attempted robbery of the Biltmore Suites Hotel, 205 W. Madison Street, Baltimore, Maryland on Friday, December 6, 2013. STOKES strongly resembles the suspect depicted on the video surveillance from the Biltmore Suites armed robbery, as well as the suspect involved in the armed robberies at the 7-11 store located at 1020 Park Avenue,

5

Baltimore, Maryland on November 22, 2013 and the Mount Vernon Hotel located at 24 W. Franklin Street, Baltimore, Maryland on November 25, 2013. The robber in all three robberies is wearing similar clothing and displaying a similar weapon. Additionally, the clothing and weapon used in these three robberies is similar to the clothing and weapon recovered from STOKES on December 23, 2013.

16. A search of STOKES' criminal history indicates he has convictions for armed robbery in May of 2000 and June of 1994.

## TARGET PHONE ANALYSIS

17. Sprint has been verified as the service provider for STOKES' telephone (**Target Telephone**) with an assigned number of **410-258-5598**, as well as for the aforementioned telephone of Suspect 2.

18. On April 9, 2014, a court order, requesting subscriber information, historical call records, and historical GPS/cell site information for the **Target Telephone** and the telephone of Suspect 2 for the period of December 1, 2013 through December 31, 2013 was signed and authorized by United States Magistrate Judge Stephanie A. Gallagher.

19. On April 18, 2014, SA Richard J. Fenner of the FBI's Cellular Analysis Survey Team conducted mapping and analysis of the **Target Telephone** and the aforementioned telephone of Suspect 2. According to the analysis, the **Target Telephone** assigned to STOKES was placed in vicinity of the Biltmore Suites robbery on December 6, 2013; the 7-11 robbery on December 12, 2013; and the Subway robbery on December 23, 2013, the day of his arrest. According to the analysis, the telephone assigned to Suspect 2 was in the vicinity of the 7-11

6

robbery on December 12, 2013. Your affiant did not request cell site records from the service provider for November 2013, which would relate to the armed robberies of the 7-11 store located at 1020 Park Avenue, Baltimore, Maryland on November 22, 2013 and the Mount Vernon Hotel located at 24 W. Franklin Street, Baltimore, Maryland on November 25, 2013.

20. On May 9, 2014, a subpoena was served at the Baltimore City Detention Center (BCDC) to locate any and all property that was recovered and submitted upon the arrival and booking of STOKES at BCDC. The BCDC property department provided a written statement indicating that the property belonging to STOKES, to include one cell phone, was released and mailed to Aaron Stokes, with the address of 819 N. Collington Avenue, Baltimore, Maryland 21205 on January 4, 2014. My investigation has revealed that Aaron Stokes is the son of Gilbert STOKES.

21. Your affiant has made a call to the **Target Telephone** and the phone continuously rang, with no answer or voicemail.

22. Phone records obtained from Sprint on June 9, 2014, pursuant to a federal grand jury subpoena, indicate that the **Target Telephone** is still receiving incoming calls as recently as June 6, 2014. Additionally, the phone records contain numerous telephone calls and text messages between STOKE's **Target Telephone** and the telephone of the co-conspirator, Suspect 2, between the dates of December 11, 2013 and December 12, 2013, the day of the 7-11 robbery.

23. The **Target Telephone's** evidentiary significance lies not only in the contents of the telephone, but in STOKES possessory interest in the **Target Telephone**. As discussed in this Affidavit, the **Target Telephone** was an instrument used in the planning and coordination of a

7

# 14-1474 TJS

Hobbs Act robbery and a conspiracy to commit that robbery. Therefore, the location of **Target Telephone** has significant evidentiary value.

## CONCLUSION

24. Based on the information set forth in this affidavit, I believe that sufficient probable cause exists to believe that the that the Target Telephone: (1) contains evidence of a Hobbs Act robbery and conspiracy to commit a Hobbs Act robbery in violation of 18 U.S.C. §1951, and (2) was used in connection with a Hobbs Act robbery and conspiracy to commit a Hobbs Act robbery in violation of 18 U.S.C. § 1951.

25. Given the ongoing and secret nature of this investigation, and the desire to seek a search and seizure warrant in order to obtain the phone if it is tracked to a specific location, I hereby request to delay the notice required by FED. R. CRIM. P. 41 for a period of 30 days from the termination of tracking.

Sung Kim
Special Agent
Federal Bureau of Investigation

Subscribed to and sworn to me this 26th day of June, 2014.

Timothy J. Sullivan
United States Magistrate Judge